UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **TEXAS EASTERN TRANSMISSION, LP f/k/a TEXAS EASTERN TRANSMISSION CORPORATION,**<br><br>*Plaintiff,*<br><br>v.<br><br>**L.L. GOLSON, L.L.C., THOMAS HENDERSON ASHWORTH, AND CAROLYN JEAN ASHWORTH,**<br><br>*Defendants.* | **CIVIL ACTION NO. 5:23-CV-00589**<br><br>**JUDGE S. MAURICE HICKS, JR.**<br><br>**MAGISTRATE JUDGE MARK L. HORNSBY** |

**TEXAS EASTERN TRANSMISSION, LP'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Texas Eastern Transmission, LP (f/k/a Texas Eastern Transmission Corporation) ("**Texas Eastern**") and respectfully requests that the Court grant Texas Eastern leave to amend the Amended & Restated Complaint ("**Amended Complaint**") to further demonstrate the Court's subject matter jurisdiction. The Court should grant Texas Eastern leave to amend because:

1. Texas Eastern has not delayed in seeking this amendment; there is no prejudice to the Ashworths; and Texas Eastern's amendment is not futile; and

2. Jurisdictional allegations may be amended in either the trial or appellate court under 28 U.S.C. §1653.

In support of this Motion, Texas Eastern states as follows.

## I. BRIEF PROCEDURAL BACKGROUND AND OVERVIEW OF PROPOSED AMENDMENT

Although Texas Eastern unequivocally demonstrated this Court's subject matter jurisdiction based on factual allegations in the Amended Complaint, because the Ashworths'

#101864550v1

continue to misrepresent and mischaracterize Texas Eastern's allegations in their Reply,[1] Texas Eastern requests leave to amend the Amended Complaint to make clear Texas Eastern's allegation with the support of the declaration of Lesley Brown, Senior Engineer for Texas Eastern's parent company, in order to avoid even the remote risk of delay to the February 13, 2024 preliminary injunction hearing.  Texas Eastern's proposed amendments leave no doubt that this Court has, and always had, jurisdiction over Texas Eastern's claims against both the Ashworths and Golson at all relevant times.

Time is of the essence for Texas Eastern in securing its Pipeline.  The possibility of further delay is untenable when it comes to the integrity of this high pressure interstate pipeline, the service provided to end users of the natural gas, and the potential risk to public safety.  This second amendment is undertaken to remove even the remotest chance of further delay occasioned by arguments over this Court's jurisdiction.

Attached as **Exhibit A** is Texas Eastern's proposed Second Amended & Restated Complaint for Injunctive Relief and Damages ("**Second Amended Complaint**").  Texas Eastern's proposed amendments, supported by the declaration of Mr. Brown (**Exhibit A, Compl. Ex. 1**), are summarized in the below annotated excerpt from Paragraph 2.

First, Texas Eastern confirms with the declaration of Mr. Brown the value of the injury to be prevented by Texas Eastern's claim for injunctive relief: hundreds of thousands of dollars to repair or replace damaged pipeline to millions of dollars for catastrophic pipeline rupture and downstream impacts.  Second, Texas Eastern clarifies that it has already incurred $140,000 in engineering costs as a result of the Defendants' breaches of their easement agreements.  In paragraph 25, Texas Eastern alleges that the Ashworths disputed that their berm posed an integrity

---

[1] Doc 34, Reply Memo.

#101864550v1

concern to the Pipeline and that the Ashworths' first violated their easement, which apparently emboldened their neighbor (Goslon) to build a berm on the neighboring property in violation of that easement. Therefore, the Ashworths may be held fully responsible for causing Texas Eastern to incur the costs of the Barr Report under Texas Eastern's allegations. Finally, Texas Eastern alleges that, based on estimates from early 2023, the costs to remediate the Ashworth Berm ranges from approximately $10,000 to $13,000 and the cost to remediate the Golson Berm ranges from approximately $15,000 to $20,000.

**Ex. A, Proposed Second Amended & Restated Complaint, ¶2**
**(pertinent new language highlighted and bolded)**

The amount in controversy in this matter exceeds the sum of $75,000, exclusive of interest and costs, **for Golson and the Ashworths, separately. First, the injury Texas Eastern seeks to prevent by way of its request for injunctive relief exceeds $75,000 for each berm at issue, as discussed further in this Second Amended Complaint. Ex. 1, Brown Decl. ¶ 32 Each berm interferes with Texas Eastern's ability to inspect and maintain the Pipeline, which could cause a major gas leak to go unnoticed resulting in explosion, fires, personal injuries, death, and downstream impacts to users of the natural gas supplied by the Pipeline. Ex. 1, Brown Decl. ¶ 32 Such damages range from hundreds of thousands of dollars to repair or replace damaged pipeline to millions of dollars for catastrophic pipeline rupture and downstream impacts. Ex. 1, Brown Decl. ¶ 32. Second, Defendants are both liable to Texas Eastern for the $140,000 Texas Eastern incurred in engineering costs as a result of the Defendants' breaches of their easement agreements. [Ex. 1, Brown Decl. ¶ 32] The apportionment of those damages to be determined by the Court based on the Defendants' respective culpability in causing Texas Eastern's damages and/or because the Defendants are jointly and severally liable as a matter of law. Third, Defendants are each liable to Texas Eastern for the costs to remediate their respective berms, including both equipment and labor, which ranges from approximately $10,000 to $13,000 for the Ashworth Berm and approximately $15,000 to $20,000 for the Golson Berm based on quotes received by Texas Eastern and Texas Eastern's own internal estimate as of early 2023. Ex. 1, Brown Decl. ¶ 32**. These damages were caused by Defendants' breach of the respective easement agreements as described fully in this Second Amended Complaint. Thus, the required diversity jurisdictional amount in controversy is satisfied.

The Court should grant Texas Eastern leave to amend because there is no "undue delay, bad faith or dilatory motive on the part of the movant, [no] repeated failures to cure deficiencies by amendments previously allowed, [no] undue prejudice to the opposing party by virtue of allowance of the amendment, [and no] futility [in] amend[ing]." *Jones v. Robinson Prop. Grp. LP*, 427 F.3d 987, 994 (5th Cir. 2005).

As the following timeline demonstrates, Texas Eastern completed briefing expeditiously (two weeks ahead of schedule) and is filing this Motion for Leave within seven (7) days of the Ashworths' Reply.

- September 1, 2023: The Barr Report[2] was complete. [Doc. 18-3].

- October 10, 2023: Texas Eastern filed its First Amended and Restated Complaint for Injunctive Relief and Damages ("**Amended Complaint**") [Doc. 18].

- November 13, 2023: The Ashworths filed their Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, Motion to Dismiss Pursuant to Rule 12(b)(6), or in the Alternative, Motion to Sever Party Defendant ("**Motion to Dismiss**") [Doc. 28].

- November 20, 2023: Texas Eastern filed its Response Brief in Opposition to the Motion to Dismiss ("**Response**") [Doc. 32].

- December 4, 2023: The Ashworths filed their Reply Memorandum to the Response ("**Reply**") [Doc. 34].

- December 11, 2023: Texas Eastern filed this Motion for Leave to Amend ("**Motion for Leave**")[Doc. 35].

This is Texas Eastern's first motion for leave to amend, and therefore Texas Eastern has not had repeated failures to cure despite allowed amendments. Nor can the Ashworths claim any prejudice at this nascent stage of the litigation.

---

[2] "Barr Report" refers to the 132-page Technical Memoradum prepared by Barr Engineering, Co. analyzing Barr's survey, investigation, and testing of both berms at issue in this litigation.

Finally, as explained further below, Texas Eastern's amendment is not futile (even as it may be unnecessary given Texas Eastern's allegations already covered the same factual ground). Contrary to the Ashworths' position in the Reply, Texas Eastern's claim for injunctive relief must be considered for the jurisdictional amount in controversy. Contrary to the Ashworth's position in the Reply, Texas Eastern is entitled to prove that the Ashworths were responsible for some, the majority of, or all of the engineering costs Texas Eastern incurred as a result of the Ashworth and Golson Berms. Finally, contrary to the Ashworths' untenable reading of the Easement in the Motion to Dismiss and Reply, Texas Eastern is entitled to recover the remediation costs caused by the Ashworths intentional stockpiling of over 10,000 cubic feet of soil weighing more than 800,000 pounds (400 Tons) on top of Texas Eastern's pipeline in the right-of-way.

## II.   APPLICABLE STANDARD

Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend freely. *Jones v. Robinson Prop. Grp. LP*, 427 F.3d 987, 994 (5th Cir. 2005). The Fifth Circuit determined that the language of the rule evidences a bias in favor of granting leave to amend. *Id*. Further, "[d]effective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653 (2023).

Denying leave to amend requires the trial court to find "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. Because none of these factors apply, the Court should grant Texas Eastern's Motion for Leave.

## III. TEXAS EASTERN'S AMENDMENTS ARE NOT FUTILE

### A. Amendments to Further Describe Injunctive Relief Value to Texas Eastern

Texas Eastern seeks to amend the Amended Complaint to further describe the injunctive relief value to Texas Eastern. As pled in the Amended Complaint, Texas Eastern is seeking temporary and permanent injunctive relief against the Ashworths to prevent potential damage to Texas Eastern's interstate natural gas pipeline that would (1) interfere with Texas Eastern's critical pipeline integrity testing,[3] (2) damage the pipeline causing hundreds of thousands of dollars to repair/replace,[4] (3) interrupt service to downstream users of natural gas supplied by Texas Eastern's pipe;[5] and/or (4) result in a catastrophic failure of the pipeline.[6] As the facts pled in Texas Eastern's Amended Complaint allegations already demonstrated, the value of the right to be protected by Texas Eastern's request for injunctive relief ranges from hundreds of thousands of dollars to millions of dollars and far exceeds the minimum threshold of $75,000 per defefendant.

In their Reply, however, the Ashworths take the position that (1) Texas Eastern must state the dollar value for the injunctive relief in the Amended Complaint,[7] and (2) that Texas Eastern's injunctive relief damages are only "potential or speculative" damages that cannot be considered for federal court jurisdiction.[8] Both positions are completely contrary to the law on evaluating injunctive relief for the purposes of amount-in-controversy analysis.

---

[3] Doc. 18, Am. Compl., ¶39, ¶51; Doc. 18-3, p.2.
[4] Doc. 18, Am. Compl., ¶41, ¶54-56; Doc. 18-1, ¶13.
[5] Doc. 18, Am. Compl., ¶42; Doc. 18-1, ¶13. The Pipeline specifically supplies natural gas to industries related to lumber/mill operations, power generation and natural gas distribution. Due to the nature of the single line system, any shutdown would cause a major impact to each of the industries relying on the delivery of natural gas, which would in turn would cause significant disruption to product production and end customers. Am. Compl., Ex. 1, Brown Decl. ¶ 14.
[6] Doc. 18, Am. Compl., ¶41, ¶48-51, ¶53, 80.
[7] Doc. 34, Reply, p.2, Section I.A. ("Specifically, after the Motion was filed, Plaintiff has now alleged damages "rang[ing] from hundreds of thousands of dollars to millions of dollars[.]" Such lofty allegations were not part of the Plaintiff's Amended Complaint and should not be considered by this Court.").
[8] *Id.*

Injunctive relief in circumstances like this case is seeking to **prevent injury**. Such relief is necessarily **potential** and its value to Texas Eastern is in the injury **prevented**. This is the very essence of federal law on evaluating injunctive relief for the purpose of amount-in-controversy requirements. *Southern Natural Gas Co. v. Knight*, CA 98-3150, 1999 U.S. Dist. LEXIS 6056; 1999 WL 239529 (E.D. La. Apr. 21, 1999) (amount in controversy met where plaintiff claimed seedlings planted in right-of-way "might cause a major gas leak to go unnoticed, resulting in explosions, fires, personal injuries, and death, and because the root systems of trees could cause damage to the pipelines and their cathodic protections systems, leading to major leaks or ruptures").

Louisiana federal courts have repeatedly held amount-in-controversy requirements met under circumstances similar to this matter. A case directly on point is *Southern Natural Gas Co. v. Knight*, CA 98-3150, 1999 U.S. Dist. LEXIS 6056; 1999 WL 239529 (E.D. La. Apr. 21, 1999). In *Southern Natural Gas*, just as here, the landowner intentionally altered the pipeline company's right-of-way forcing the pipeline company to seek injunctive relief in federal court to prevent injury. The landowners in *Southern Natural Gas*, planted cypress and loblolly pine tree seedlings in the right-of-way. *Id.* at 3. Southern Natural Gas mowed the seedlings in the right-of-way, which the landowners then replanted. *Id.* When the landowners indicated their intent to continue planting in the right-of-way, Southern Natural Gas filed in federal court seeking injunctive relief to prevent the landowners from doing so. *Id.* at 3-4.

The landowners challenged federal court jurisdiction by asserting that Southern Natural's claim did exceed the jurisdictional minimum of $75,000. In response, Southern Natural submitted an affidavit stating:

> because planting the right-of-way with trees could interfere with aerial inspection
> that might cause a major gas leak to go unnoticed, resulting in explosions, fires,

> personal injuries, and death, and because the root systems of trees could cause damage to the pipelines and their cathodic protections systems, leading to major leaks or ruptures, that the value of an injunction against such planting exceeds $75,000.

*Id.* at 5-6. The court held that this was sufficient to meet the jurisdictional amount-in-controversy requirement. *Id.* at 6.

Texas Eastern's proposed Second Amended Complaint includes the declaration of Lesley Brown, Senior Engineer for Texas Eastern's parent company, who attests

> [t]he injury Texas Eastern seeks to prevent by way of its request for injunctive relief exceeds $75,000 for each berm. Each berm interferes with Texas Eastern's ability to inspect and maintain the pipeline, which could cause a major gas leak to go unnoticed resulting in explosion, fires, personal injuries, death, and downstream impacts to users of the natural gas supplied by the Pipeline. Such damages range from hundreds of thousands of dollars to repair or replace damaged pipeline to millions of dollars for catastrophic pipeline rupture and downstream impacts.[9]

Just as in *Southern Natural Gas*, these allegations supported by Mr. Brown's declaration satisfy the amount-in-controversy requirement for federal court jurisdiction. Texas Eastern's amendments in the Second Amended Complaint as to injunctive relief value are not futile (even if they may not be necessary under the law) and the Court should grant Texas Eastern's Motion for Leave.

### B. Amendments to Clarify Damages for Engineering Costs

Texas Eastern alleges that it incurred $140,000 in engineering costs to survey, inspect, test, and assess the impact of the Ashworth and Golson Berms.[10] In paragraph 25 of the Second Amended Complaint, Texas Eastern alleges that: "[t]he Ashworths refused to acknowledge Texas Eastern's internal assessment that the Ashworth Berm posed an integrity concern, and the Ashworths refused to remove their dirt berm. The Ashworths refusal apparently emboldened their

---

[9] Ex. A, Second Am. Compl., Ex. 1, Decl. L. Brown, ¶32.
[10] Ex. A, Second Am. Compl., Ex. 1, Decl. L. Brown, ¶32.

#101864550v1

Page 8

adjacent neighbor to construct his own dirt berm, only larger."[11] In light of the facts alleged in the Second Amended Complaint, Texas Eastern could prove at trial that the Ashworths are responsible for all of those damages.

The Ashworths may defend on the basis that they are not responsible for some, the majority of, or any of Texas Eastern's engineering costs because some portion or all of those costs are owed by the co-Defendant Golson.

At this stage, Texas Eastern need not prove that it will prevail on its claim to recover the full costs from the Ashworths for the $140,000 to satisfy the amount-in-controversy requirement. "The required 'demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.'" *Robertson v. Exxon Mobile Corp.*, 814 F.3d 236, 2015 U.S. App. LEXIS 22953, 2015 WL 9592499 * 2 (5th Cir.2015) (citing *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir.2010)).

Texas Eastern's amendments in the Second Amended Complaint as to the amount of Texas Eastern's damages for engineering costs are not futile (even if they may not be necessary under the law) and the Court should grant Texas Eastern's Motion for Leave.

    **C.**    **Amendments to Clarify Damages for Remediation Costs**

Texas Eastern alleges that the costs to remediate the Ashworth Berm ranges from approximately $10,000 to $13,000 and approximately $15,000 to $20,000 for the Golson Berm based on estimates for labor and equipment as of early 2023. Texas Eastern supports those allegations with the declaration of Mr. Brown.[12]

---

[11] Ex. A, Second Am. Compl, ¶25.
[12] Ex. A, Second Am. Compl., Ex. 1, Decl. L. Brown, ¶32.

#101864550v1

In the Reply, the Ashworths again argue that Texas Eastern is responsible for the damages caused by the Ashworths' breach of the Easement when they intentionally stockpiled over 10,000 cubic feet of soil weighing more than 800,000 pounds in a 40-foot wide by 16-feet tall earthen berm that blocks Texas Eastern from utilizing (traversing) the easement with any of the traditional equipment normally used in the maintenance and operation of the pipeline.[13]  This is contrary to any reasonable reading of the Easement or the law.  Texas Eastern fully briefed the Ashworths' untenable interpretation of the Easement in Texas Eastern's Response and fully incorporates that briefing here.[14]  As Texas Eastern demonstrated in the Response, the very narrow and limited rights pertaining to commercial timber operations do not apply to the Ashworths' intentional stockpiling of nearly a million of pounds of dirt on top of Texas Eastern's pipeline.

Texas Eastern's amendments in the Second Amended Complaint as to the amount of Texas Eastern's damages for remediation costs are not futile (even if they may not be necessary under the law) and the Court should grant Texas Eastern's Motion for Leave.

## IV.  CONCLUSION

For the reasons stated in this Motion for Leave, Texas Eastern Transmission, LP, respectfully requests that the Court grant Texas Eastern's Motion for Leave to Amend, and for such other and further relief as this Court deems appropriate.

---

[13] Doc. 34, Reply, pg. 4-7.
[14] Doc. 32, Response, pg. 16-20.

#101864550v1

DATED: December 11, 2023

        Respectfully submitted,

        **JONES WALKER LLP**

        /s/ *Michael B. Donald*
        MICHAEL B. DONALD (La. Bar No. 16891)
        TIFFANY C. RAUSH (Pro Hac Vice)
        811 Main Street, Suite 2900
        Houston, Texas 77002
        Telephone No.: 713-437-1800
        Facsimile No.: 713-437-1810
        Email: mdonald@joneswalker.com
        Email: traush@joneswalker.com

        *Attorneys for Texas Eastern Transmission, LP*

I hereby certify that on the 11th day of December, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

        */s/ Michael B. Donald*
        MICHAEL B. DONALD